UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE JOSEPH PORTEE,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Case No. 1:20-cv-1414-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF No. 23, 26) |

　　　　This matter is before the Court on Plaintiff Tyrone Joseph Portee ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration. The parties have consented to entry of final judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 9-10).

　　　　The matter was taken under submission on the parties' briefs without a hearing. Having reviewed the record, the administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows.

///

///

///

## I. DISCUSSION

Plaintiff makes the following arguments:

1. The ALJ erred by rejecting the opinion from Dr. Wagner without proper evaluation; and

2. The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer legitimate reasons for rejecting Plaintiff's subjective limitations.

### A. Dr. Wagner's medical opinion

This claim is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.[1] 20 C.F.R. §§ 404.1520c, 416.920c; (ECF No. 19, p. 17; ECF No. 22, pp. 4-5). The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *6 (9th Cir. Apr. 22, 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must

---

[1] Plaintiff applied for disability benefits on August 10, 2017.

2

simply be supported by substantial evidence." *Id.* at *1. "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 2022 WL 1195334, at *6.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

*Id.*

As the Ninth Circuit also noted, "The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 2022 WL 1195334, at *6 (citing § 404.1520c(b)(2)). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' *Id.* § 404.1520c(b)(3). In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.*

With these legal standards in mind, the Court reviews the ALJ's weight given to the 2020 medical opinion of Dr. Wagner:

> On January 4, 2020, the claimant underwent an internal medicine evaluation with Roger Wagner, M.D. at the request of the agency. The claimant reported his chief complaints were stroke and hypertension. The claimant reported a stroke in 2013 followed by three weeks of rehabilitation for left sided hemiparesis which "has

improved some." He reported complete vision loss in the right eye at that time, and he had some dysarthria, which resolved, and some dysphagia. He reported that he still had some slight problems with thin liquids. The claimant complained of mild memory problems and cognitive slowing, and he reported that he has balance problems, and occasionally trips. He reported chronic kidney disease for which he sees a nephrologists. He reported glaucoma in the left eye with vision loss in the right eye, and he follows up with his eye doctor every three to six months. The claimant reported he does little cooking or cleaning. He goes shopping, and performs his own activities of daily living but he does not have a driver's license (Exhibit 13F, pp. 2-3).

On physical examination, the claimant was able to get up from a chair in the waiting room and walk "at a somewhat slow speed" back to the examination room without assistance. Dr. Wagner noted the claimant did not need to reach out to the wall to ambulate and was able to walk in the correct door, and it in the correct chair based on verbal commands. He sat comfortably and was able to get on and off the examination table and remove his footwear. He was able to pick up a paperclip. His blood pressure was 150/98. Visual acuity with Snellen's test was 20/100 on the left without lenses and 20/200 on the left with pinhole. On the right, the claimant could not see the top line of the chart and he had no light perception. Pupil reactivity on the right was very decreased, and there appeared to be a cataract on the right. The claimant's gait and station was normal, he was able to walk on heels and toes, finger to nose was normal, and Romberg was negative. He did not use an assistive device. Range of motion in his cervical and lumbar spine was within normal limits, and straight leg raising was negative in the supine and sitting positions.

Range of motion in the claimant's hips, shoulders, and upper and lower extremities was within normal limits. Muscle strength was 5/5 in the right upper and lower extremities, and 5-/5 in the left upper and lower extremities (Exhibit 13F, pp. 4-5). Dr. Wagner assessed a stroke in 2013 with apparent immediate vision loss in the right side, and left hemiparesis and he still had some mild left sided weakness. He noted the claimant described some very mild dysphagia of liquids and some mild memory and cognitive problems. He assessed hypertension with chronic kidney disease and glaucoma in the left eye. Dr. Wagner opined the claimant could stand and walk up to four hours "given the history of the stroke and slight weakness." He could lift and carry 11-20 pounds occasionally and up to ten pounds frequently due to the history of the stroke. He was limited to frequent postural activities with the exception of stairs and ramps, which may be performed occasionally with limitations due to history of stroke and slight left sided weakness. He should not climb ladders and scaffolds, or balance given the balance problems. He could operate foot pedals frequently with the left foot.

He opined the claimant should nor work around unprotected heights, moving parts, or operate a vehicle given the vision problems (Exhibit 13F, pp. 6-9). I note in the boilerplate residual functional capacity form Dr. Wagner opined the claimant could frequently climb ramps and stairs, stoop, and crouch, and occasionally climb

4

> ladders, ropes or scaffolds due to low back and knee pain, and he could frequently operate a motor vehicle (Exhibit 13F, pp. 10-11).
>
> . . .
>
> For the reasons stated above, I have not found Dr. Wagner's January 4, 2020 opinion persuasive, as while supported by his examination findings, the information given to him by the claimant is not consistent with his reports to his primary care providers in the record, and Dr. Wagner's examination findings of left sided strength deficits are not consistent with the multiple physical examination findings documented in the record as discussed above. I also note Dr. Wagner's finding of 20/100 vision in the claimant's left eye is not consistent with the claimant's ophthalmologist, Dr. Poulsen's July 9, 2019 uncorrected visual acuity finding 20/60 in the right eye. Furthermore as this opinion is a year remote to the claimant's date last insured and finds only trace deficits, which are not supported by the objective record as of the date last insured, this opinion cannot be relied upon as of the date last insured. Had the findings concluded there were greater or differing deficits from those found in the record, it might relate back to the date last insured, but this is not the case. Overall, outside of the opinion at (13F) the record suggests full motor and coordination and is supportive of the State agency disability consultant's findings, at least as remote as the date last insured.

(A.R. 22-23, 24).

Notably, Dr. Wagner's 2020 opinion is contradicted by Dr. Wagner's own earlier opinion from November 2017, as well as the opinion of state agency medical consultants. In Dr. Wagner's earlier opinion dated November 6, 2017, he opined that Plaintiff could stand and walk "up to six hours with normal breaks," could lift "50 pounds occasionally and 25 pounds frequently," and had no postural limitations. The ALJ found Dr. Wagner's earlier opinion persuasive, stating:

> Dr. Wagner's November 6, 2017 opinion, though not entirely consistent with the record as the claimant reported balance, memory, and concentration issues that he did not report to his primary care provider, Dr. Wagner's examination findings are more consistent with the claimant's primary care provider examination findings, and his opinion is supported by both the record and his examination findings. Accordingly, I find this opinion to be persuasive.

(A.R. 24).

In evaluating the ALJ's reasons to discount Dr. Wagner's 202 opinion, it is worth noting that the ALJ incorporated the workplace environmental activities from Dr. Wagner's 2020 opinion and included substantial limitations regarding Plaintiff's vision. (A.R. 16 ("He is capable of performing jobs that can be performed with monocular vision, but is not able to perform jobs requiring the reading of fine print. He should not work in jobs subjecting him to direct sunlight,

5

or which exposes him to unprotected heights of machinery with dangerous moving mechanical parts."). What the ALJ declined to adopt were the increased limitations to standing, walking, lifting, and carrying from Dr. Wagner's more recent opinion.

As for the ALJ's reason that Dr. Wagner's 2017 opinion was more consistent with the primary care provider examination findings than Dr. Wagner's 2020 opinion, although the ALJ does not cite to any records in this discussion section, the ALJ did an extensive summary of medical records earlier in the opinion, which included various relatively normal examination findings, except for Plaintiff's vision. For example, a review of medical records by Dr. Patel, who was the primary care physician for at least a substantial amount of time under review, support the ALJ's reason here. Plaintiff did not report balance, memory, and concentration issues with Dr. Patel. *See e.g.,* A.R. 308 ("Neurological: No dizziness, numbness, weakness or seizure activity."); A.R. 309 ("Encounter for general adult medical examination without abnormal findings."). It is also true, as the ALJ stated, that "Dr. Wagner's finding of 20/100 vision in the claimant's left eye is not consistent with the claimant's ophthalmologist, Dr. Poulsen's July 9, 2019 uncorrected visual acuity finding 20/60 in the right eye." (A.R. 377). Although again, the ALJ incorporated substantial limits to Plaintiff's vision in the RFC.

The ALJ's reason of preferring the earlier to the later opinion of Dr. Wagner is also legitimate. Here, the later opinion was after the date last insured. While this alone would not be sufficient to disregard the opinion, it is a relevant consideration especially as the same doctor performed an earlier evaluation within the relevant period.

Accordingly, the Court finds that the ALJ's reasons for the weight given to Dr. Wagner's 2020 opinion are legally sufficient and supported by substantial evidence.

**B.      Subjective Symptom Testimony**

Plaintiff also challenges the ALJ's weight given to Plaintiff's subjective symptom testimony. Regarding this issue, the Ninth Circuit has provided the following guidance:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree

6

> of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). In weighing a claimant's credibility, an ALJ may consider, among other things, the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. *Thomas v. Barnhart,* 279 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court "may not engage in second-guessing." *Id.*

The ALJ found as follows regarding Plaintiff's subjective symptom testimony:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the overall record does confirm the claimant had a stroke event in April of 2013, but the record shows full strength and motor function by the time he saw primary care provider Ashley Johnson, FNP on April 24, 2013. I note Ms. Johnson noted the claimant's wife reported he was seen at Saint Agnes Medical Center for a mild stroke "on Monday." The claimant denied "having any kind of disability whatsoever." He denied malaise, fatigue, night sweats, blurred vision, double vision, photophobia, visual changes, glaucoma, and he did not wear glasses. He denied any sensation of room spinning, dyspnea, orthopnea, shortness of breath, weakness, migraine headache, and loss of balance. He reported decrease in cognitive skills, and he denied any symptoms of paralysis, or difficulty concentrating. The claimant was assessed with vomiting, malignant hypertension, and transient ischemic attack without residual deficits (Exhibit 2F, pp. 24-26). The claimant's April 24, 2013 primary care provider documentation is not consistent with the claimant's January 4, 2020 report to Dr. Wagner that he was hospitalized and in rehabilitation for three weeks (Exhibit 13F, p. 2), and I note the request for medical records sent to Saint Agnes Medical Providers on September 14, 2017 was returned with notation that the claimant was "not seen at this facility." (Exhibit 5F).
>
> Furthermore, subsequent primary care provider examination findings, discussed above in detail, did not reveal any weakness or residual effects of the claimant's cerebrovascular event, and the claimant denied any weakness, dizziness, shortness

of breath, fatigue, or other sequelae repeatedly over the course of the following six years, with any healthcare provider (Exhibits 2F; 3F; 8F; 9F; 10F; 11F; 12F).

(A.R. 23-24).

The Court has reviewed the cited records and find that they are supportive of the ALJ's reasoning in that they reflect largely normal self-reports and examination findings regarding his strength and motor function. *See* A.R. 270-271 (noting largely unremarkable findings including "The patient denies weakness, convulsions/seizures, numbness, decrease in cognitive skills, loss of balance, head injury, or tremors;"); A.R. 308 ("Patient had stroke in April 2013.  He has no deficit now."); A.R. 383 (indicating "negative" results in review of all systems).

Accordingly, the Court finds that the ALJ provided sufficient reasons to not fully credit Plaintiff's subjective symptom testimony.

## II.     CONCLUSION AND ORDER

In light of the foregoing, the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:    **May 23, 2022**                              /s/ Erica P. Grosjean
                                                                UNITED STATES MAGISTRATE JUDGE

8